UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICK THELEN,                              )
                                             )
               Plaintiff,                    )
                                             )
       v.                                    )   Civil Action No. 15-0102 (BAH)
                                             )
UNITED STATES DEPARTMENT OF JUSTICE,         )
                                             )
               Defendant.                    )

**MEMORANDUM OPINION**

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 10].[1] For the reasons discussed below, the Court will grant the motion.

I. BACKGROUND

The plaintiff brought this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Justice ("DOJ") to challenge the response of the Executive Office for United States Attorneys ("EOUSA") to his request for information. *See* Compl. ¶¶ 1, 3-5. Generally, the plaintiff sought "any and all documents, records, investigative reports, memos, or any of the like documents in [agency] files" about himself and his criminal case in the United States District Court for the Eastern District of Michigan. Mem. of P. & A. in Support of Def.'s Mot. for Summ. J. [ECF No. 10-1] ("Def.'s Mem."), Decl. of David Luczynski [ECF No. 10-2] ("Luczynski Decl."), Ex. A (FOIPA Request dated January 10, 2014) at 1.

---

[1] The parties' motions for leave to file surreplies [ECF Nos. 17, 19 and 21] are granted.

1

The EOUSA acknowledged receipt of the plaintiff's request, assigned Request No. FOIA-2014-02699, on June 18, 2014. Luczynski Decl. ¶ 13; *see id.*, Ex. J (Letter to plaintiff from Susan B. Gerson, Assistant Director, Freedom of Information & Privacy Staff, EOUSA, dated June 18, 2014). After conducting a search of records maintained by the United States Attorney's Office for the Eastern District of Michigan ("USAO/MIE") and LIONS, the computer tracking system for United States Attorney's Offices, *see id.* ¶¶ 19-20, the EOUSA released 156 pages of records in full and 11 pages of records in part, and withheld 155 pages of records in full, *id.* ¶ 18. In addition, the EOUSA notified the plaintiff that it referred records which had originated with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"), the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA") to those components. *Id.*

In this action, the plaintiff demands the release of all the information he requested. *See generally* Compl. ¶¶ 1, 19-20.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory," *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)), and when they "[d]escribe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge

an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

### B. The EOUSA's Search for Responsive Records

"The adequacy of an agency's search is measured by a standard of reasonableness and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice* 705 F.2d 1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted). An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A search need not be exhaustive. *See Miller v. U.S. Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1995). As long as the agency conducts a reasonable search, it fulfills its obligations under the FOIA even if the search yields no responsive records. *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (stating that "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate").

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. *Id*. at 127. If, on the other hand, the record "leaves substantial doubt as to the sufficiency of the search, [then] summary judgment for the

agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999).

The EOUSA's declarant explains that each United States Attorney's Office maintains its own criminal case files. Luczynski Decl. ¶ 19. The plaintiff's criminal prosecution took place in the Eastern District of Michigan and, consequently, the EOUSA forwarded the plaintiff's FOIA request to the FOIA contact for that district. *Id*. Accordingly, the FOIA contact at the USAO/MIE "searched for records from the case files in the criminal prosecution case . . . identified [by the] plaintiff . . . in his request." *Id*.

United States Attorney's Offices use LIONS "to track cases and to retrieve files pertaining to cases and investigations." *Id*. Through LIONS, a user "acces[es] databases . . . to retrieve . . . information based on a defendant's name, the USAO number (United States[] Attorney's Office internal administrative number), and the district court case number for any court cases." *Id*. Here, the FOIA contact searched LIONS to locate records on "Patrick Thelen" in the USAO/MIE Criminal Case File System (Justice/USA-007). *Id*. ¶¶ 19-20. According to the EOUSA's declarant, there are no other records systems or locations within the Eastern District of Michigan or the EOUSA where other files pertaining to the plaintiff were maintained." *Id*. ¶¶ 19, 21.

According to the plaintiff, "[t]he EOUSA has, or should have, in its possession over 37 pages of DEA spectrograph analysis that it has not included in its index (R. 20-1, pp. 3-4) or turned over to [him]." Combined Mot. to File Surreply and Surreply to Gov't's Reply [ECF No. 21] at 2. He explains that there were lab reports analyzing the drugs seized at his residence in 1997, "yet there is no reference about them in EOUSA's summary judgment motion relating to the DEA." *Id*. For these reasons, the plaintiff contends, "[t]he EOUSA has not done an adequate

4

search," because it has not disclosed "documents relating to the testing of drugs seized from [his] home," documents that he "knows for a fact . . . exist." *Id.*

Neither the EOUSA's failure to produce particular documents nor the plaintiff's "mere speculation that as yet uncovered documents might exist, undermines the adequacy of the EOUSA's search. *See Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam); *see Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (finding the requester's "assertion that an adequate search would have yielded more documents is mere speculation" and affirming district court's conclusion that agency's search procedure was "reasonably calculated to generate responsive documents"); *Concepción v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009) (finding that the plaintiff's "speculation as to the existence of additional records . . . does not render the search[] inadequate"). "Adequacy and reasonableness turn not on the yield of the search, but on the 'appropriateness of the methods used to carry out the search.'" *Waldner v. U.S. Dep't of Justice*, 981 F. Supp. 2d 14, 17 (D.D.C. 2013) (citing *Iturralde*, 315 F.3d at 315), *aff'd*, No. 13-5350, 2014 WL 3014045 (D.C. Cir. June 4, 2014) (per curiam). The plaintiff's challenge pertains only to the results of the EOUSA's search, and such an assertion alone does not overcome the defendant's showing on summary judgment.

The Court concludes that the EOUSA conducted a reasonable search for records responsive to the plaintiff's FOIA request.

### C. Grand Jury Materials Withheld Under Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute" if the "statute either (A) requires [withholding] in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Federal Rule of Criminal Procedure 6(e), which prohibits

5

disclosure of matters occurring before a grand jury, *see, e.g., In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 499-500 (D.C. Cir.), *cert. denied sub nom. Dow Jones & Co., Inc. v. Clinton*, 525 U.S. 820 (1998), qualifies as a statute for purposes of Exemption 3 because Congress affirmatively enacted it. *See Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981). While acknowledging the existence of a "grand jury exception" to the general disclosure requirements of the FOIA, the United States Court of Appeals for the District of Columbia Circuit limits the exception to material which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

The EOUSA withholds "materials . . . specifically identified as grand jury materials" on the ground that their disclosure "would impermissibly reveal the scope of the grand jury and the direction of the investigation by providing the identities of the targets of the investigation, the source of the evidence [and] actual evidence produced before the grand jury." Luczynski Dcl. ¶ 26. Specifically, the EOUSA protects the name of a grand jury witness and other information from which the witness's name could be ascertained. *Id.*, Ex. Q (Vaughn Index, Doc. Nos. 3, 5). Its declarant explains that release of these grand jury materials affords "the requester . . . the scope of the grand jury's investigation by setting forth [the source of] evidence to develop [the government's] case, how the [g]overnment developed its case, and [on] whom the [g]overnment relied . . . to develop the elements of the alleged crimes." *Id.* ¶ 26.

The plaintiff raises two challenges to the EOUSA's decision to withhold grand jury materials. First, he contends that he "is entitled to transcripts of the grand jury proceeding[s]

themselves because they were previously disclosed to [him] and his [defense] attorney" by the prosecutor.  Pl.'s Resp. to Def.'s Mot. for Summ. J. [ECF No. 12] ("Pl.'s Opp'n") at 2-3; *see* Combined Mot. to File Surresponse and Surresponse [ECF No. 17] at 2-3.  Second, the plaintiff argues that the grand jury materials have entered the public domain through the testimony of Detective David Tuma, who testified both before the grand jury and "later . . . at . . . trial substantially repeating his grand jury testimony."  Pl.'s Opp'n at 2; *see* Combined Mot. to File Surresponse and Surresponse at 4.  The plaintiff's arguments are unavailing.

"[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).  Disclosure of grand jury materials to the plaintiff and his defense counsel in the context of the criminal proceedings does not amount to release of information into the public domain.  *See Cottone v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999) (noting that "constitutionally compelled disclosure to a single party simply does not enter the public domain").  The fact that the same witness testified before the grand jury and at trial does not establish that specific information withheld by the EOUSA in this FOIA action duplicates information that already has made its way into the public domain via Detective Tuma's trial testimony.  *See Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1280 (D.C. Cir. 1992) ("The government . . . is willing to give [the plaintiff] only exactly what he can find in hard copy . . . .  We think this position, grudging though it may be, is supported . . . by our public domain cases, which . . . require the requester to point to 'specific' information identical to that being withheld" (citations omitted)).  Furthermore, "[a]s the D.C. Circuit has explained, [the] FOIA is neither a substitute for criminal discovery nor an appropriate means to vindicate discovery abuses."  *Boyd v. Exec. Office for U.S. Attorneys*, __ F. Supp. 3d __, __, 2015 WL

7720161, at *6 (D.D.C. Nov. 30, 2015) (citations and internal quotation marks omitted); *Clay v. U.S. Dep't of Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (rejecting requester's argument for disclosure of records under the FOIA because he claims to have a due process right under the Fifth Amendment to the United States Constitution to discovery in a criminal case).

The Court concludes that the EOUSA properly has withheld grand jury information under Exemption 3.

### 3. Information Withheld Under Exemptions 5 and 7

Despite the opportunity provided to the plaintiff "to properly address [the defendant's] assertion[s] of fact," Fed. R. Civ. P. 59(e), the plaintiff does not oppose the defendant's decision to withhold information under Exemptions 5 and 7.[2] He "is not concerned with" the defendant's "contentions regarding ATF and FBI documents," Combined Mot. to File Surresponse and Surresponse at 1, and "the DOJ's withholdings in its November 18, 2015, Reply (R.20)," Combined Mot. to File Surreply and Surreply to Gov't's Reply [ECF No. 21] at 1. In this circumstance, the Court may treat as conceded the withholding of information under Exemptions 5, 7(C), 7(D), 7(E) and 7(F). *See Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015) (noting that plaintiff has "burden to identify evidence that a reasonable jury could credit in support of each essential element of [his] claims" and "cannot rely on the allegations of [his] own complaint in response to a summary judgment motion, but must substantiate them with evidence"); *Labow v. U.S. Dep't of Justice*, 66 F. Supp. 3d 104, 113 (D.D.C. 2014) (treating as conceded "those arguments with respect to the FBI's search and its withholdings under

---

[2] The FBI and the BATFE invoke Exemption 6 in conjunction with Exemption 7(C). *See* Hardy Decl. ¶ 20 n.2; Boucher Decl. ¶ 20; *see id.*, Ex. G (Vaughn Index, Doc. Nos. 1-5). Because the Court finds that Exemption 7(C) applies, it need not consider Exemption 6 with respect to the same information. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

Exemptions 6, 7(C), and 7(F)" because the plaintiff had "not raised specific objections to [them]").

Nevertheless, "[a] defendant moving for summary judgment must still 'discharge the burden the rules place upon [it]: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.'" *Grimes*, 794 F.3d at 93 (quoting *Celotex Corp. v. Catrett Corp.*, 477 U.S. 317, 328 (1986) (White, J., concurring)). "The burden that the movant 'always bears' is that of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* at 93-94 (quoting *Celotex*, 477 U.S. at 323); *see Alexander v. FBI*, 691 F. Supp. 2d 182, 193 (D.D.C. 2010) ("[E]ven where a summary judgment motion is unopposed, it is only properly granted when the movant has met its burden."). Here, the defendant has met its burden.

a. Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted); *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975). This exemption encompasses the deliberative process privilege and the attorney work product privilege. *See Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002); *see Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 905 F. Supp. 2d 161, 173 (D.D.C. 2012).

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)). "To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish 'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). A document is "deliberative" if "it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975). The deliberative process privilege is thought to "prevent injury to the quality of agency decisions." *Sears*, 421 U.S. at 151. Such protection is designed to encourage frank discussion of policy matters, prevent premature disclosure of proposed policies, and avoid public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action. *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

"The work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative.'" *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(3)); *see FTC v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (discussing scope of work product protection), *cert. denied*, __ S. Ct. __, 2016 WL 207272 (U.S. Jan. 19, 2016). Records may be withheld as attorney work product if they contain the "mental impressions, conclusions, opinions or legal theories of a party's attorney" and were "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(B); *see Miller v. U.S. Dep't of Justice*, 562 F.

Supp. 2d 82, 115 (D.D.C. 2008) (concluding that documents which "reflect such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [a plaintiff's] criminal case" qualify as attorney work product under FOIA Exemption 5); *Heggestad*, 182 F. Supp. 2d at 8 (stating that the attorney work product privilege "covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories").

Both the deliberative process privilege and the attorney work product privilege may apply to the same information. *See, e.g., Miller*, 562 F. Supp. 2d at 114-15 (concluding that draft grand jury indictment, trial attorney certification and draft affidavit supporting a request for the plaintiff's extradition were protected under Exemption 5 insofar as they reflected "predecisional communications among government personnel such as discussions of various litigation issues, alternatives, and strategies," and "such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [the plaintiff's] criminal case"); *Heggestad*, 182 F. Supp. 2d at 8-12 (concluding that prosecution memoranda prepared by attorneys to assist their superiors in determining whether to authorize prosecution of the targets of a criminal investigation prior to the final decision to prosecute properly were withheld under Exemption 5).

The EOUSA relies on Exemption 5 to withhold records "prepared by, or at the request or direction of an attorney, and made in anticipation of, or during litigation." Luczynski Decl. ¶ 29. The declarant explains that the relevant records contain "information related to trial preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to [the] plaintiff's criminal case." Luczynski Decl. ¶ 29. For example, the declarant explains that the EOUSA withholds attorney work product from a series of emails between USAO/MIE attorneys discussing plaintiff's criminal case, such as "the U.S. Attorney's opinion, theory of the case,

11

facts, assessment of facts, impression of the witnesses, the strength of . . . evidence and problem areas in the case," all of which "was prepared in anticipation of litigation[.]" *Id*., Ex. Q (Vaughn Index, Doc. No. 1). Also withheld are copies of a memorandum between an Assistant United States Attorney and a DEA Special Agent which contain not only attorney work product, that is, the attorney's thoughts and impressions prepared in anticipation of litigation, but also "pre-decisional communications among government personnel." *Id*., Ex. 1 (Vaughn Index, Doc. No. 2). These records "contain deliberations concerning asset forfeiture decisions [and] possible strategies as they relate to the [plaintiff's criminal] case," *id*., as well as deliberations between "the United States Attorney's Office and other federal and state agencies in their consideration of possible criminal actions against [the] plaintiff," *id*. ¶ 30.

The plaintiff does not challenge the EOUSA's decision to withhold information under Exemption 5, and based on the supporting declaration and Vaughn Index, the Court concludes that the withholdings are proper. *See, e.g., Ewell v. U.S. Dep't of Justice*, __ F. Supp. 3d __, __, 2016 WL 316777, at *7 (D.D.C. Jan. 26, 2016) (concluding "that memoranda and e-mails sent between prosecutors in anticipation of prosecution are covered by the work product privilege"). As to this ground for withholding responsive information, the Court therefore will grant in part the defendant's summary judgment motion as conceded.

### 3. Exemption 7

#### *i*. Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982). "To show that the disputed documents were compiled for law enforcement purposes, the [agency]

12

need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

It is apparent from the plaintiff's criminal history, the nature of his FOIA request, and the declarant's explanation that the "information at issue was compiled . . . to facilitate the investigation and criminal prosecution of [the] plaintiff," Luczynski Decl. ¶ 31, that the responsive records were compiled for law enforcement purposes. Thus, the EOUSA easily meets its initial burden by establishing that the records at issue are law enforcement records within the scope of Exemption 7.

### *ii*. Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) ("In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), we must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect.") (internal quotation marks and citation omitted). The privacy interest at stake belongs to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being

associated unwarrantedly with alleged criminal activity." *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).

The EOUSA withholds the identities of third-parties, including witnesses and law enforcement personnel. Luczynski Decl. ¶ 32. For example, the EOUSA withholds the name of a Special Agent from a Criminal Case History Report, and the name of a Case Agent from a Victim/Witness Program Summary Checklist. *Id*., Ex. Q (Vaughn Index, Doc. Nos. 12-13, respectively). Similarly, the FBI, BATFE and the DEA withhold the names of their Special Agents, other law enforcement personnel, and other third parties whose names appear in the responsive records on the ground that disclosure could reasonably be expected to constitute an unwarranted invasion of their personal privacy. *See* Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. [ECF No. 16] ("Reply"), Decl. of David M. Hardy [ECF No. 16-1] ("Hardy Decl.") ¶¶ 22-25; *id*., Decl. of Stephanie M. Boucher [ECF No. 16-2] ("Boucher Decl.") ¶¶ 20-24; Def.'s Reply, on behalf of the Drug Enforcement Admin., to Pl.'s Opp'n to Def.'s Mot. for Summ. J. [ECF No. 20] ("DEA Reply"), Decl. of Katherine L. Myrick ("Myrick Decl.") ¶¶ 30-32.

The plaintiff's sole mention of Exemption 7(C) pertains to the names of individuals mentioned in grand jury transcripts. *See* Pl.'s Opp'n at 2. He contends that, because the "transcripts were already given to [him] and his attorney in [the] criminal case[,] the names are already in the public domain" and thus no longer deserve protection. *Id*. As the Court discussed above, release of grand jury materials to the plaintiff in the context of his criminal case is not a release of information into the public domain. Absent a showing by the plaintiff of a public interest to outweigh the privacy interests of the third parties mentioned in these responsive records, the Court concludes that the defendant properly has withheld information under Exemption 7(C).

*iii*. Exemption 7(D)

Exemption 7(D) protects information which "could reasonably be expected to disclose the identity of a confidential source . . . , and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). The FBI withholds "the name, identifying data, and information of an individual who provided information to the FBI . . . during the course of its on-going criminal investigations of various third parties connected to Organized Crime[.]" Hardy Decl. ¶ 31. Its declarant explains that "the words 'PROTECT IDENTITY' [appear] next to the individual's name in the documents," offering "a positive indication of an express assurance of confidentiality." *Id*. Release of the individual's identity, the declarant explains, "would place [him or her] in danger," and in a larger context "would have a chilling effect on the . . . cooperation of other FBI confidential informants in the future." *Id*.

The DEA, too, withholds information provided by individuals from which an informant could be identified. *See* Myrick Decl. ¶¶ 34-35. Here, its declarant explains, the withheld information was provided to the DEA by a coded confidential source who has "a continuing cooperative association, by written signed agreement, with [the] DEA or another law enforcement agency." *Id*. ¶ 36. He or she has been given an express assurance of confidentiality "in [his or her] identit[y] and the information [he or she] provides." *Id*. His or her name is not used in DEA investigative records; instead the DEA uses an identification code or refers to the source as "CI, SOI, or CS." *Id*.

In addition, the DEA withholds "source-identifying and source-supplied investigative information," *id*. ¶ 39, provided by "an individual with a close connection to [the] plaintiff's

15

criminal activities," *id.* ¶ 40. Among other things, the declarant states, the source "provided information regarding [the] plaintiff's . . . reprisals against other individuals and the use of firearms." *Id.* Under these circumstances, and in light of plaintiff's history of "possession with intent to distribute cocaine and methamphetamine . . . , possession of a firearm by a felon," and, for example, his practice of "maintain[ing] several firearms and other weapons at his residence," *id.* ¶ 38, the declarant asserts that confidentiality was implied. *Id.*

The Court concludes, based on the declarants' statements, that the FBI and DEA properly withhold information pertaining to confidential sources under Exemption 7(D). *See, e.g., Engelking v. DEA*, 119 F.3d 980, 981 (D.C. Cir. 1997) (finding that "[m]ost people would think that [sources] would be unwilling to speak to [law enforcement agencies] except on the condition of confidentiality" where the requester conducted a "methamphetamine operation . . . subject of multiple cooperative investigations by federal, state, and local law enforcement agencies" culminating in his criminal "conviction following the seizure of two methamphetamine laboratories, six handguns, and a rifle"); *Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 04-1180, 2007 WL 625896, at *1 (D.D.C. Feb. 26, 2007) (withholding information "pertaining to the investigation of drug trafficking and money laundering by a known cocaine trafficker and an individual with ties to organized crime, and the investigation of plaintiff for arson").

*iv*. Exemption 7(E)

Exemption 7(E) covers documents that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "To clear that relatively low bar, an

agency must demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *Public Employees for Environmental Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

Under Exemption 7(E), the DEA withholds G-DEP and NADDIS numbers. *See generally* Myrick Decl. ¶¶ 42-47. Its declarant explains that a G-DEP code "indicate[s] the classification of the violator(s), the types and amounts of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity." *Id*. ¶ 44. Disclosure of a G-DEP code "would help identify priority given to narcotics investigations, types of criminal activities involved, and violator ratings," and with this information a suspect could "change [his] pattern of drug trafficking in an effort . . . to avoid detection and apprehension," thus "thwart[ing] the DEA's investigative and law enforcement efforts." *Id*. ¶ 46. A NADDIS number is a unique number assigned to a particular known or suspected drug violator or entity of investigative interest to the DEA. *Id*. ¶ 45. "Because of the manner in which NADDIS numbers are assigned and the methods for which they are used, release of the information could allow violators to avoid apprehension, and could place law enforcement personnel or informants in danger[.]" *Id*. ¶ 47.

The BATFE withholds "codes and file numbers contained on a criminal history printout." Boucher Decl. ¶ 26. Its declarant explains that disclosure of this information "could allow individuals outside the agency to circumvent agency functions and gain access to sensitive investigative information." *Id*. ¶ 27. For example, someone could "alter or create false records" in the relevant databases, and access to the databases "could result in the circumvention of [BATFE's] law enforcement duties." *Id*.

17

The Court concludes that both the DEA and BATFE demonstrate that the decision to withhold information under Exemption 7(E) was appropriate. *See Brown v. U.S. Dep't of Justice*, No. 13-CV-01122, 2015 WL 1237274, at *13 (E.D. Cal. Mar. 17, 2015) (concluding that government need not produce detailed Vaughn index "because it will invariably reveal the personal identifying information that the DOJ seeks to protect," including G-DEP and NADDIS identifiers); *Shapiro v. U.S. Dep't of Justice*, 78 F. Supp. 3d 508, 520 (D.D.C. 2015) (concluding that "(1) case file numbers, based on a file numbering system that identifies the investigative interest or priority given to such matters; (2) collection and/or analysis of information, specifically the manner in which FBI applies and analyzes information for use in its investigations and intelligence purposes, which is not publicly known; and (3) law enforcement techniques utilized to conduct national security and intelligence investigations" properly were withheld under Exemption 7(E)).

*v*. Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "While courts generally have applied [FOIA] Exemption 7(F) to protect law enforcement personnel or other specified third parties, by its terms, the exemption is not so limited; it may be invoked to protect 'any individual' reasonably at risk of harm." *Long v. DOJ*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006) (quoting 5 U.S.C. § 552(b)(7)(F)).

The FBI invokes Exemption 7(F) to protect "detailed information provided by an individual, who expressly asked the FBI to protect his identity, about alleged criminal activities," including "alleged criminal activities involving Organized crime," on the ground that "disclosure . . . would readily reveal [his] identity." Hardy Decl. ¶ 33. Given the individual's "current . . .

18

circumstances, and the subject matter and detailed nature of the information [he or she] provided . . . , it is reasonable to expect that release of [his or her] identifying information would place [him or her] at great risk." *Id.* Similarly, the DEA withholds "the names of third parties or any individual . . . identified as a confidential source" on the ground that disclosure "could [render him or her] target[s] of "physical attacks, threats, harassment, and murder [or] attempted murder[.]" Myrick Decl. ¶ 49. The declarant explains that the plaintiff "has . . . been classified as [a] violent criminal based upon prior arrests" including arrests for possession with intent to distribute cocaine and methamphetamine, and possession of a firearm by a felon. *Id.*

The Court concludes that these components properly withheld information under Exemption 7(E).

### *D. Segregability*

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); s*ee Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999) (citation omitted). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

On review of all of the defendant's supporting declarations and Vaughn Indices, the Court concludes that the defendant has adequately specified "which portions of the document[s] are disclosable and which are . . . exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

## III. CONCLUSION

The EOUSA has established that it conducted a reasonable search for records responsive to the plaintiff's FOIA request and that it properly referred responsive records to the FBI, the DEA, and the BATFE. Each component has justified its decision to withhold information under the claimed exemptions. The defendant's motion for summary judgment is therefore granted. An Order consistent with these conclusions is issued separately.

DATE: March 12, 2016

/s/ *Beryl A. Howell*

BERYL A. HOWELL
United States District Judge